UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAVIER OLIVER SANCHEZ,<br><br>　　　　　Plaintiff,<br><br>　v.<br><br>SEBASTIAN GARCIA,<br><br>　　　　　Defendants. | No. 2:23-cv-01192-DC-SCR<br><br>FINDINGS AND RECOMMENDATIONS |

　　　　Plaintiff Javier Oliver Sanchez's motion for a default judgment in the amount of $72,144.72, plus $3,776 in attorney's fees (ECF No. 14 at 4),[1] is before the undersigned pursuant to Local Rule 302(c)(19). Magistrate Judge Barnes heard and submitted the motion on April 11, 2024. ECF No. 21. Defendant Sebastian Garcia did not appear at that hearing. This matter was reassigned to the undersigned on August 6, 2024 (ECF No. 22). For the reasons provided below, the undersigned recommends that Plaintiff's motion be granted, but that default judgement be entered only as to a portion of the total damages that Plaintiff requests.

////

---

[1] Page number citations such as this are to the page number reflected on the court's CM/ECF system and not to the page numbers assigned by the parties.

1

# BACKGROUND

Plaintiff initiated this matter by filing a Complaint on June 21, 2023. ECF No. 1. The Complaint alleges that between January and July 2022, Plaintiff was employed by Defendant, the sole owner of a business in Lodi, California. ECF No. 1 at ¶¶ 4-6, 11-12, 14. Plaintiff worked an average of 90 hours per week. *Id*. at ¶ 16. Plaintiff's salary was $850 per week, or an average of $9.44 per hour, paid biweekly. *Id*. at ¶¶ 17, 19. The Complaint concludes that Defendant did not pay Plaintiff the minimum wage for hours worked, did not pay Plaintiff 1.5 times the regular pay rate for hours worked in excess of 40 hours per week, and did not pay amounts owed to Plaintiff within 72 hours of Plaintiff's termination. *Id*. at ¶¶ 19-22, 35.

The Complaint further alleges that Defendant did not keep proper time records for the hours Plaintiff worked, as required by the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq*. ("FLSA"). *Id*. at ¶ 23. It also alleges that Defendant did not authorize paid off-duty meal or rest breaks as required under Wage Order No. 4-2001 §12 (issued by the California Department of Industrial Relations), and owes Plaintiff one hour of regular pay per violation. *Id*. at ¶¶ 43, 46. Finally, the Complaint alleges that Defendant did not provide itemized wage statements reflecting the wages Plaintiff earned, hours he worked, and applicable hourly rates. *Id*. at ¶¶ 48-49.

Based on these allegations, the Complaint asserts claims under (1) the FLSA, (2) California Labor Code §1194 and Industrial Welfare Commission ("IWC") Wage Order 5, (3) California Labor Code § 203 *et seq.*, (4) California Labor Code §§ 226.2 and 226.7 and Wage Order No. 4-2001 § 12, and (5) California Labor Code §§ 226(a), 226(e), and 226.2. *Id*. at 3-4, 6, 8-9.

Proof of substitute service of process on Mayra Ortega, who confirmed that Defendant lived at the address on file, was filed on October 4, 2023. ECF No. 10. Defendant did not answer the Complaint or otherwise appear in the case. On November 29, 2023, Plaintiff filed a request for entry of default. ECF No. 11. The Clerk entered default on December 1, 2023. ECF No. 12.

On December 19, 2023, Plaintiff moved for default judgment and served the motion on Defendant by U.S. Mail. ECF No. 14 at 1-2. On January 29, 2024, Magistrate Judge Barnes ordered Plaintiff to file supplemental briefing addressing the factors outlined in *Eitel v. McCool*.

ECF No. 17 at 1-2 (citing 782 F.2d 1470, 1471-72 (9th Cir. 1986) (citing 6 Moore's Federal Practice ¶ 55-05[2], at 55-24 to 55-26)). Plaintiff filed the supplemental brief on February 13, 2024. ECF No. 18. Magistrate Judge Barnes heard the motion on April 11, 2024. ECF No. 21.

## LEGAL STANDARDS

Federal Rule of Civil Procedure 55(b)(2) governs applications for default judgment. Upon entry of default, the complaint's factual allegations regarding liability are taken as true, while allegations regarding the amount of damages must be proven. *Dundee Cement Co. v. Howard Pipe & Concrete Prods.*, 722 F.2d 1319, 1323 (7th Cir. 1983) (citing *Pope v. United States*, 323 U.S. 1 (1944); *Geddes v. United Fin. Group*, 559 F.2d 557 (9th Cir. 1977)); *see also DirectTV v. Huynh*, 503 F.3d 847, 851 (9th Cir. 2007); *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987).

Where damages are liquidated, i.e., capable of ascertainment from definite figures contained in documentary evidence or in detailed affidavits, judgment by default may be entered without a damages hearing. *Dundee*, 722 F.2d at 1323. Unliquidated and punitive damages, however, require "proving up" at an evidentiary hearing or through other means. *Dundee*, 722 F.2d at 1323-24; *see also James v. Frame*, 6 F.3d 307, 310-11 (5th Cir. 1993).

Granting or denying default judgment is within the court's sound discretion. *Draper v. Coombs*, 792 F.2d 915, 924-25 (9th Cir. 1986); *Aldabe v. Aldabe*, 616 F.2d. 1089, 1092 (9th Cir. 1980). The court considers a variety of factors in exercising this discretion. *Eitel*, 782 F.2d at 1471-72. Among them are:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Eitel*, 782 F.2d at 1471-72 (citing 6 Moore's Federal Practice ¶ 55-05[2], at 55-24 to 55-26).

////

/////

////

# ANALYSIS

For the following reasons, the *Eitel* factors favor entry of default judgment.

### a. Possibility of Prejudice to the Plaintiff

The first *Eitel* factor contemplates the possibility of prejudice to the plaintiff if default judgment is not entered. *Eitel*, 782 F.2d at 1471. Prejudice can be established where failure to enter a default judgment would leave plaintiff without a proper remedy. *PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F.Supp.2d 1172, 1177 (C.D. Cal 2002). Here, Plaintiff has no alternative for recovering damages suffered from Defendants' failure to pay wages owed, maintain proper time records or wage statements, and authorize paid meal breaks. ECF No. 18 at 3-4. Accordingly, the first factor weighs in favor of default judgment.

### b. Merits of Plaintiff's Substantive Claims and Sufficiency of the Complaint

The second and third *Eitel* factors jointly examine whether the plaintiff has pleaded facts sufficient to establish and succeed upon its claims. *Pepsico, Inc.*, 238 F.Supp.2d at 1175 (citing *Kleopping v. Fireman's Fund*, 1996 WL 75314, at *2 (N.D. Cal. Feb. 14, 1996)). Plaintiff's motion for default judgment seeks recovery on claims under (1) the FLSA, (2) California Labor Code § 1194 and Wage Order 5, (3) California Labor Code § 203 *et seq.*, (4) California Labor Code §§ 226.2 and 226.7 and IWC Wage Order No. 4-2001 § 12, and (5) California Labor Code §§ 226(a), 226(e) and 226.2. ECF No. 18 at 4-5; see ECF No. 1 at 3-4, 6, 8-9.

#### i. Minimum Wage and Overtime

Between January 1, 2022 and January 1, 2023, the minimum wage in the State of California was $14.00 per hour for any employer with 25 or fewer employees, and $15.00 for any employer with 26 or more employees. IWC Order No. MW-2025. Both the FLSA and applicable IWC Orders require compensation for hours worked in excess of forty per week at an hourly rate at least one and one-half times a employee's regular rate of pay. 29 U.S.C. §207(a)(1); IWC Wage Order No. 5-2001 § 3(A)(1). Under the California Labor Code, any employee who receives less than the applicable legal minimum wage or overtime compensation is entitled to recover the unpaid balance of such compensation, interest thereon, reasonable attorney's fees, and costs of suit. Cal. Labor Code § 1194(a).

1    Plaintiff submits an affidavit with a table calculating the unpaid wages Defendant owes,
2 based both on the minimum wage and the number of overtime hours worked. ECF No. 14 at 9.
3 Plaintiff asserts that he worked 90 hours a week for 23 weeks but was effectively paid only $9.44
4 per hour. *Id*. at 6, 9. Based on a minimum wage of $15 per hour, Plaintiff calculates that he was
5 underpaid ($15 - $9.44) x 90 = $500.40 per week for failure to pay minimum wage, plus $15 x
6 0.5 x (90 - 40) = $375 per week for failure to pay an extra 50% overtime for 50 of the 90 hours.
7 *Id*. at 9. By Plaintiff's calculation, the underpaid wages for these 23 weeks therefore total
8 $875.40 x 23 = $20,134.20. *Id*.

9    The table then becomes somewhat confusing. The table shows that Plaintiff *worked* "0"
10 hours per week for eight weeks in June and July 2022, though below the table Plaintiff indicates
11 that he seeks to recover "unpaid wages" for those eight weeks. *Id*. at 9. The reasonable
12 conclusion is that Plaintiff in fact *worked* 90 hours per week during those eight weeks—as
13 Plaintiff attests to elsewhere, *id*. at 6—but that he was *paid* for "0" of those hours. For these
14 weeks, Plaintiff asserts Defendant should have paid $9.44 x 40 = $377.60 per week for 40 hours
15 of work, and $14.36 x 50 = $708 per week for 50 hours of overtime. *Id*. This totals $1,085.60
16 per week, or $8,684.80 for those eight weeks. *Id*. When added to the $20,134.20 owed for the
17 prior 23 weeks, Plaintiff asserts Defendant owes him $28,819. *Id*.

18    As to the first 23 weeks, a minimum wage of $15 per hour only applies if Defendant had
19 more than 25 employees during the period in question. See IWC Order No. MW-2025. If not,
20 the minimum wage is only $14 per hour. *Id*. In neither the Complaint nor Plaintiff's affidavit
21 does he plead any facts regarding the size of Defendant's workforce. See ECF Nos. 1, 14.
22 Plaintiff has only pled sufficient facts to show that Defendant should have paid him at a $14
23 minimum hourly rate.

24    Based on this reduced minimum wage, Defendant owed ($14 - $9.44) x 90 = $410.40 per
25 week for failure to pay minimum wage for 90 hours, plus $14 x 0.5 x (90 - 40) = $350 per week
26 in 50% overtime for 50 of the 90 hours. The recoverable damages for these 23 weeks therefore
27 total $760.40 x 23 = $17,489.20.
28 As to the final eight weeks, Plaintiff does not explain why he calculates the amount owed using

5

1  his actual hourly wage ($9.44), which fell well below the minimum wage. See ECF No. 1 at ¶ 20,
2  ECF No. 14 at 6, 9. On Plaintiff's showing that he did in fact work 90 hours per week through
3  the end of July 2022, the Court will recalculate Plaintiff's damages using the $14 minimum wage:
4  $14 x 40 = $560 per week for 40 hours of work, and $21 x 50 = $1,050 per week for 50 hours of
5  overtime. This totals $1,610 per week, or $12,880 for those eight weeks.

Plaintiff has pled sufficient facts to find that Defendant failed to pay wages that comply with FLSA and IWC regulations. Damages under this claim, including attorney's fees and costs, should total $17,489.20 + 12,880 = $30,369.20.

However, an amount awarded in default judgment may not "differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c). "The purpose of this rule is to ensure that a defendant is put on notice of the damages being sought against him so that he may make a calculated decision about whether it is in his best interest to answer." *Operating Engineers Health and Welfare Trust Fund for Northern California v. Pipe-Net, Inc*., 2024 WL 3390528, at *5 (N.D. Cal. June 14, 2024). Plaintiff sought $28,819 in damages for wage-and-hour violations. ECF No. 1 at 13; ECF No. 14 at 9. Despite being entitled under wage-and-hour laws to more than $30,000 based on the applicable minimum wage, **$28,819** becomes the cap for this category of damages.

### ii. Waiting Time Penalties

If an employer discharges an employee, the wages earned and unpaid at the time of discharge are due and payable immediately. Cal. Labor Code § 201(a). If an employee without a written contract for a definite period quits his or her employment, his or her wages shall become due and payable not later than 72 hours thereafter, unless the employee has given 72 hours previous notice of his or her intention to quit, in which case the employee is entitled to his or her wages at the time of quitting. Cal. Labor Code § 202(a). An employer who willfully fails to pay these amounts "without abatement of reduction" must also pay wages for that employee at the same rate until either the employer pays the amount owed or the employee commences an action for such amounts, but "the wages shall not continue for more than 30 days." Cal. Labor Code § 203(a). Calculating the amount owed under this provision

entails "the calculation of a daily wage rate, which can then be multiplied by the number of days of nonpayment, up to 30 days." *Mamika v. Barca*, 68 Cal. App. 4th 487, 493 (Cal. App. 3rd Dist. 1998).

Plaintiff did not file this Complaint until June 2023, eleven months after the termination of his employment with Defendant. See ECF No. 1 at ¶ 34. Whether Defendant fired Plaintiff or Plaintiff resigned, more than 30 days elapsed between when unpaid wages became due and commencement of this action. For purposes of waiting time penalties, Plaintiff alleges he worked 15 hours per day before termination.[2] On that basis, he asserts that Defendant owes $9.44 x 8 = $75.52 per day for the first eight hours and $14.16 x 7 = $99.12 per day for overtime hours. ECF No. 1 at 14; ECF No. 14 at 10. Plaintiff alleges that Defendant therefore owes $174.64 per day, or $174.64 x 30 = $5,239, for the 30 days after Plaintiff's wages became due. ECF No. 1 at ¶ 38; ECF No. 14 at 8.

Plaintiff does not explain why he uses his base pay of $9.44 per hour for these calculations despite his assertion that this violated FLSA and state labor laws. See *supra*; ECF No. 1 at ¶¶ 19-22; ECF No. 14 at 9-10. As explained above, however, the amount awarded in default judgment may not "differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c). Because using the legal minimum wage to calculate damages would cause those damages to exceed the claimed amount, the Court may not do so.

There is no dispute that Defendant would owe at least the amount pled in the Complaint for failure to pay wages owed upon Plaintiff's discharge, if not more. Plaintiff has pled sufficient facts to establish and succeed upon his **$5,239** claim for waiting time.

### iii. Rest Periods

IWC Wage Order No. 4-2001 § 11(A) requires employers to authorize employees to take at least a 30-minute meal break for any workday exceeding 6 hours. The employee must be relieved of all duty during the meal period unless the nature of the work prevents it, in which case the employer and employee can agree to an "on-duty" meal period in writing if the agreement states

---

[2] A 15-hour workday is consistent with Plaintiff's allegation that he worked 90 hours per week, assuming he worked six days per week.

the employee may revoke such agreement at any time. *Id*.

Similarly, employers must authorize employees to take rest periods "at the rate of ten (10) minutes net rest time per four (4) hours or major fraction thereof." IWC Wage Order No. 4-2001 § 12(A). Such rest time shall be counted as hours worked, for which the employer may not deduct employee wages. *Id*. The California Labor Code prohibits employers from making employees work during meal and rest periods so mandated. Cal. Labor Code § 226.7(b).

Under the Wage Order, an employer who fails to provide an employee a meal period or rest period as required shall pay the employee one hour's pay for every workday that "the meal period is not provided" and one for every workday that "the rest period is not provided." IWC Wage Order No. 4-2001 §§ 11(B), 12(B).

The Complaint alleges that Defendant regularly failed to authorize Plaintiff to take "paid off-duty meal or rest breaks" insofar as he required Plaintiff "to remain available for work at all times during his work day." ECF No. 1 at ¶ 43. Plaintiff alleges that because he worked 15-hour days, he was entitled to both a meal period and two rest breaks. *Id*. at ¶ 45. Based on this assertion, Plaintiff submits a table showing that because he was denied three breaks a day for six days per week, or eighteen breaks per week, he is entitled to eighteen hours of additional pay per week worked. ECF No. 14 at 11. Based on his base hourly wage of $9.44, Plaintiff asserts he should receive 18 x $9.44 = $169.92 per week, totaling $5,267.52 for the 31 weeks he worked for Defendant. *Id*.

Plaintiff misinterprets the Wage Order provisions governing mandatory rest periods and compensation owed for failure to authorize them. The penalty for failure to authorize rest time under the Wage Order is one hour's pay "for *each workday* that the rest period is not provided[,]" not for *each break* so denied. *See* IWC Wage Order No. 4-2001 § 12(B) (emphasis added). For each workday, Plaintiff can only recover one hour's pay for Defendant's failure to authorize rest time.
Between one hour for each workday without breaks and one hour for each workday without a meal period, Plaintiff's recovery is limited to two hours per workday instead of three. As a result, Plaintiff is entitled to twelve hours of additional pay per six-day workweek, not eighteen hours of

8

additional pay. See IWC Wage Order No. 4-2001 § 11(B). As discussed above, Plaintiff's hourly wage should have been at least $14 to comply with minimum wage requirements at the time. See *supra*; IWC Order No. MW-2025. Plaintiff therefore is entitled to 12 x $14 = $168 per week, totaling $168 x 31 = $5,208 for the 31 weeks Plaintiff worked for Defendant.

Although Plaintiff has pled sufficient facts to find that Defendant failed to authorize meal and rest periods as required under IWC regulations, his pleadings and evidence as to the amount owed only justify an award of **$5,208.**

### iv. Right to Itemized Statements

At the time of each payment of wages, an employer shall furnish to employee an accurate itemized statement showing, *inter alia*, gross wages earned, total hours the employee worked, deductions, net wages, and applicable hourly rates for that pay period with the number of hours worked at each rate. Cal. Labor Code § 226(a). An employee suffering injury for an employer's failure to provide this statement is entitled to recover $50 for the first pay period in which the employer failed to provide the statement and $100 for each pay period thereafter, provided that the aggregate penalty does not exceed $4,000. *Id*. at § 226(e)(1).

The Complaint alleges that Defendant never provided Plaintiff with itemized pay statements during Plaintiff's employment. ECF No. 1 at ¶ 49. Plaintiff's affidavit asserts that he is therefore owed $4,000 for these violations. ECF No. 14 at 7.

The Complaint alleges that Plaintiff was paid biweekly, and the tables attached to Plaintiff's affidavit show that he worked 31 weeks. ECF No. 1 at ¶ 17; ECF No. 14 at 9, 11. Because Plaintiff worked for 31/2 = 15.5 pay periods, he was entitled to 16 pay statements. Statutory damages include $50 for the first statement and $100 each for the remaining 15, for a total of $1,550.

Although Plaintiff has pled sufficient facts to find that Defendant failed to issue itemized pay statements, the pled facts only entitle Plaintiff to **$1,550** in damages for this cause of action.

### v. Liquidated Damages

Plaintiff's Complaint seeks liquidated damages of $20,134.20, "an amount equal to overtime wages unlawfully unpaid." ECF No. 1 at 4, 11. Plaintiff does not cite a statutory or

other legal basis for liquidated damages and his default judgment briefing does not explain a basis for liquidated damages.[3] However, because Plaintiff mentions liquidated damages under his FLSA cause of action and only with reference to overtime wages, *id*. at 4, the Court evaluates the availability of liquidated damages under the FLSA only and only for unpaid overtime, and not under the California Labor Code.

Under the FLSA, "[a]ny employer who violates the provisions of section 206 or section 207 of this title shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages." 29 U.S.C. § 216(b). The FLSA's "liquidated damages are mandatory unless the employer establishes both subjective and objective good faith in its violation." *Cruz v. Quang*, 2015 WL 348869, at *6 (N.D. Cal. Jan. 23, 2015). "Defendant[] ha[s] failed to appear in this action and ha[s] thus failed to present any evidence establishing their good faith intention to abide by the FLSA." *Gonzalez v. Restaurant*, 2015 WL 4481978, at *5 (N.D. Cal. July 22, 2015).

"Where a plaintiff sues for unpaid overtime under both the FLSA and the California Labor Code, FLSA liquidated damages are calculated based on the FLSA regular rate of pay even if the plaintiff's damages for the actual amount of unpaid overtime is calculated based on the California Labor Code regular rate of pay." *Sillah v. Command Int'l Sec. Servs.*, 154 F. Supp. 3d 891, 913 (N.D. Cal. 2015). In 2022, the federal minimum wage was $7.25 per hour, or $10.88 per overtime hour. As explained above, Plaintiff was paid only $9.44 per hour for all overtime hours worked for the first 23 weeks of his employment for Defendant. Using the FLSA rate, Plaintiff is entitled to $10.88 - $9.44 = $1.44 per overtime hour for those 23 weeks, which amounts to $1.44 x 50 hours x 23 weeks = $1,656. For the last 8 weeks of his employment, Plaintiff was not paid at all for his overtime hours, meaning that he is entitled to $10.88 x 50 hours x 8 weeks = $4,352. The total amount of appropriate liquidated damages is **$6,008.**

---

[3] Plaintiff's default judgment briefing also confusingly requests $28,819 in liquidated damages, without explaining why this figure is higher than the figure in his Complaint.

10

### vi. Attorney's Fees and Costs

Counsel for Plaintiff also asserts in an affidavit that Plaintiff has incurred **$636** in filing and service costs, plus **$3,140** in attorney's fees for 7.85 billable hours at $400 per hour. ECF No. 14 at 12-13. Nothing suggests that these fees and costs are unreasonable.

### vii. Summary of Analysis Concerning Damages, Fees, and Costs

For the reasons explained herein, under *Eitel* factors two and three, Plaintiff is entitled to **$46,824 in damages and $3,776 in attorney's fees and costs.**

### c. Sum of Money at Stake

In weighing the fourth *Eitel* factor, "the court must consider the amount of money at stake in relation to the seriousness of the defendant's conduct." *PepsiCo, Inc.*, 238 F.Supp.2d at 1176-77. This factor weighs against default judgment when a large sum of money is at stake. *Eitel*, 782 F.2d. at 1472.

Here, Plaintiff seeks $28,819 in damages for unpaid wages, $28,819 in liquidated damages, $5,239.20 in rest and meal violations, $5,239.20 in waiting time penalties, and $4,000 in statutory damages for a total of $72,144.72. ECF No. 14 at 7. Plaintiff also seeks $3,776 in attorney's fees and costs, for a total of $75,920.72. ECF No. 14 at 12-14; ECF No. 18 at 6. Plaintiff argues that because this amount is "reasonably proportionate to the harm caused by Defendant's actions, properly documented, and contractually justified[,]" default judgment is appropriate. ECF No. 18 at 5-6.

However, as explained above, Plaintiff has only proven entitlement to $46,824 in damages and $3,776 in attorney's fees and costs. This reduced amount strengthens Plaintiff's argument that any default judgment in this action would be relatively modest. This factor does not weigh against default judgment.

### d. Possibility of Disputed Material Facts

The fifth *Eitel* factor examines whether a dispute regarding material facts exists. *Eitel*, 782 F.2d. at 1471-72. Here, Defendant failed to appear, leading to an entry of default. Given that circumstance, there is no possibility for a dispute of material fact. See *Elektra Entm't Group, Inc. v. Crawford*, 226 F.R.D. 388, 393 (C.D. Cal. 2005) ("Because all allegations in a well-pleaded

11

complaint are taken as true after the court clerk enters default judgment, there is no likelihood that any genuine issue of material fact exists"). Indeed, it appears this factor generally weighs against entry of default judgment only when a defaulting party contests a motion for default judgment and meaningfully disputes material facts. *See, e.g., NewGen, LLC v. Safe Cig, LLC*, 840 F.3d 606, 610, 616 (9th Cir. 2016) (finding that defaulting party which did not answer because it believed service was defective but then contested a motion for default judgment had not raised possibility of disputed material facts where it "stat[ed] only general objections to the existence of a contract, the extent of the relationship between the parties, and the alleged services performed"). This factor weighs in favor of a default judgment.

### e. Whether the Default Was Due to Excusable Neglect

The sixth *Eitel* factor considers whether Defendants' failure to answer is due to excusable neglect. *Eitel*, 782 F.2d at 1471-72. This factor considers due process, ensuring defendants are given reasonable notice of the action. See *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950).

Here, Defendant was properly served with a copy of the Complaint by substitute service. ECF No. 10. Additionally, the request for the Clerk to enter default (ECF No. 11) was served on Defendant by mailing it to the same address as substitute service. Both the motion for default judgment and the supplemental brief in support thereof were served on Defendant by mailing copies to the same address, despite the fact that "[n]o service is required on a party who is in default for failing to appear." Fed. R. Civ. P. 5(a)(2); ECF No. 14 at 1-2, ECF No. 18 at 8. Under the circumstances, it is unlikely that Defendant's inaction was the result of excusable neglect. *Shanghai Automation Instrument Co., Ltd. v. Kuei*, 194 F.Supp.2d 995, 1005 (N.D. Cal. 2001) (finding no excusable neglect because the defendants were served with the complaint, the notice of entry of default, as well as the papers in support of the instant motion). This factor does not weigh against default judgment.

### f. Policy of Deciding Cases on the Merits

The seventh *Eitel* factor considers the courts' general disposition favoring judgments on the merits. *Eitel* 782 F.2d at 1472. Defendant's failure to appear has made a judgment on the

merits impossible. Accordingly, this factor does not weigh strongly against a default judgment.

## CONCLUSION

Having considered the *Eitel* factors, the undersigned finds they weigh in favor of granting Plaintiff's motion for default judgment.

IT IS HEREBY RECOMMENDED that:

Plaintiff's motion for default judgment be GRANTED in the amounts of $46,824 in damages and $3,776 in attorney's fees and costs.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1). Within fourteen (14) days after these findings and recommendations are filed, any party may file written objections with the Court. A document containing objections should be titled "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within 14 days after service of the objections. The parties are advised that failure to file objections within the specified time may, under certain circumstances, waive the right to appeal the District Court's order. See *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

Dated: January 29, 2025

SEAN C. RIORDAN
UNITED STATES MAGISTRATE JUDGE